1    NIALL P. McCARTHY (CA SBN 160175)
     nmccarthy@cpmlegal.com
2    JUSTIN T. BERGER (CA SBN 250346)
     jberger@cpmlegal.com
3    **COTCHETT, PITRE & McCARTHY**
     San Francisco Airport Office Center
4    840 Malcolm Road, Suite 200
     Burlingame, CA 94010
5    Telephone: (650) 697-6000
     Facsimile: (650) 692-3606
6
7    *Attorneys for Relators*

8

9

10                **IN THE UNITED STATES DISTRICT COURT**

11             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12
                          **CV10  0965 RGK  (RZx)**
13                        Case No.

14   UNITED STATES OF AMERICA *ex rel.* JON      **COMPLAINT FOR MONEY**
     WILLEM PASQUA and JEFF HAUSER, and          **DAMAGES AND CIVIL**
15   STATE OF CALIFORNIA *ex rel.* JON           **PENALTIES FOR**
     WILLEM PASQUA and JEFF HAUSER,              **VIOLATIONS OF THE**
16                                               **FALSE CLAIMS ACT AND**
                                                 **CALIFORNIA FALSE**
17           Plaintiffs,                         **CLAIMS ACT**

18       vs.                                     **DEMAND FOR JURY TRIAL**

19   KAN-DI-KI, LLC f/k/a KAN-DI-KI, INC.
     d/b/a DIAGNOSTIC LABORATORIES AND
20   RADIOLOGY, a California Limited Liability
     Corporation,
21
             Defendant.
22

23

24

25            **[FILED IN CAMERA AND UNDER SEAL**

26            **PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

27

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

                         **COMPLAINT**

# TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    **JURISDICTION AND VENUE** . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   **PARTIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   **OVERVIEW OF THE SCHEME** . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.     **DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY PROVIDING DISCOUNTED PRICES AS A KICKBACK IN EXCHANGE FOR THE REFERRAL OF "PULL-THROUGH" MEDICARE AND MEDI-CAL BUSINESS** . . . . . . . . . . . . . . . . . . . . . . . 6

VI.   **EVIDENCE OF THE SCHEME** . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.   **VIOLATION OF THE LOW-PRICE LAWS** . . . . . . . . . . . . . . . 11

VIII. **CAUSES OF ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     FIRST CAUSE OF ACTION
     On Behalf of the United States
     Federal False Claims Act, Presenting False Claims
     31 U.S.C. § 3729(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     SECOND CAUSE OF ACTION
     On Behalf of the United States
     Federal False Claims Act, Making or Using False Records or
     Statements Material to Payment or Approval of False Claims
     31 U.S.C. § 3729(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     THIRD CAUSE OF ACTION
     (In the Alternative)
     On Behalf of the United StatesFederal False Claims Act,
     Retention of Proceeds to Which Not Entitled
     31 U.S.C. § 3729(a)(1)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     FOURTH CAUSE OF ACTION
     On Behalf of California
     California False Claims Act, Presenting False Claims
     California Government Code § 12651(a)(1) . . . . . . . . . . . . . . . . . . . . 15

     FIFTH CAUSE OF ACTION
     On Behalf of California
     California False Claims Act, Making or Using False Records
     or Statements To Obtain Payment or Approval of False Claims
     California Government Code § 12651(a)(2) . . . . . . . . . . . . . . . . . . . . 16

     SIXTH CAUSE OF ACTION
     (In the Alternative)On Behalf of California
     California False Claims Act, Retention of Proceeds
     Of Inadvertently Submitted False Claims
     California Government Code § 12651(a)(8) . . . . . . . . . . . . . . . . . . . . 17

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**COMPLAINT**                i

IX.   **PRAYER FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**DEMAND FOR JURY TRIAL**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

Plaintiffs UNITED STATES OF AMERICA ("United States") and the STATE OF CALIFORNIA ("California"), by and through Relators JON WILLEM PASQUA and JEFF HAUSER, allege as follows:

## I.   **INTRODUCTION**

1.     Over the past several years, Defendants KAN-DI-KI, LLC, doing business as DIAGNOSTIC LABORATORIES AND RADIOLOGY ("Diagnostic Labs"), has perpetrated a multi-million dollar fraud on U.S. and California taxpayers through a Medicare and Medi-Cal "kickback" scheme. Diagnostic Labs offers its customers – which are mostly Skilled Nursing Facilities ("SNFs") – artificially low rates on their Medicare Part A and HMO business, for which the SNFs pay out of their own budget. In return, those same facilities provide all of their Medicare Part B and Medi-Cal business to Diagnostic Labs, which then bills Medicare and Medi-Cal directly, and bills at the maximum allowable rate. This is an illegal kickback scheme, no more legal than if Diagnostic Labs, rather than providing below-cost discounts, had instead simply handed the SNFs an envelope of cash.

2.     Medicare is administered by the United States government, and provides health coverage to people 65 years of age and older. Medicare's soaring costs are staggering. In 2007, Medicare expenditures accounted  for 16% of all federal spending – second only to Social Security and Defense. Similarly, California's Medicaid program, called Medi-Cal, serves as a safety net for Californians unable to afford health care. Intended to provide essential care for Californians in need – a role that is especially critical during the financial crisis currently facing Californians – Medi-Cal funds are stretched to their limit.

3.     Knowing that the federal and state Governments lack the ability to track the massive amount of Medicare and Medi-Cal money as it flows through the complex healthcare delivery system, unscrupulous companies see Government money as an easy source for padding their profits. Sadly, Diagnostic Labs has

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

become part of this problem through its abuse of the Medicare and Medi-Cal programs – programs designed to benefit senior citizens and the indigent, not private companies.

4.     By offering impossibly low rates to SNFs for all of their Medicare Part A and HMO patients in exchange for all lab and x-ray business from patients covered under Medicare Part B and Medi-Cal, Defendant Diagnostic Labs is not only cheating the system, but is driving competitors out of the marketplace, thereby reducing the quantity and quality of treatment options for elders.

5.     This is a *qui tam* action for violation of the federal False Claims Act (31 U.S.C. §§ 3150 *et seq.*), and the California False Claims Act (Gov. Code §§ 12650 *et seq.*), to recover treble damages, civil penalties and attorneys' fees and costs for Plaintiffs and on behalf of the United States and California for fraudulent Medicare and Medi-Cal billings.  Non-public information personally known to Relators Jon Pasqua and Jeff Hauser serves as the basis for this action.

## II.     JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the federal False Claims Act, and authorize nationwide service of process.  Venue is proper as Defendant's principal place of business is in the Central District of California.  This Court has jurisdiction over the California False Claims Act causes of action pursuant to 31 U.S.C. section 3732(b), which confers jurisdiction on this Court for pendant claims brought under state false claims acts.

## III.     PARTIES

7.     The plaintiffs in this action are the UNITED STATES OF AMERICA ("United States") and the STATE OF CALIFORNIA ("California"), by and through Relators JON WILLEM PASQUA and JEFF HAUSER.

/ / /

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT**                                                                     2

8.     Relator JON WILLEM PASQUA ("PASQUA") is the former Vice President Marketing of Diagnostic Labs, and continues to work in the healthcare industry in Southern California.

9.     Relator JEFF HAUSER ("HAUSER") is the former Executive Vice President of Diagnostic Labs, and continues to work in the healthcare industry in Southern California.

10.     Defendant KAN-DI-KI, LLC f/k/a KAN-DI-KI, INC. d/b/a DIAGNOSTIC LABORATORIES AND RADIOLOGY is a California limited liability corporation with its principle place of business in Burbank, California. Prior to its conversion to a limited liability company, Kan-Di-Ki was a California corporation. Kan-Di-Ki is a wholly-owned subsidiary of Diagnostic Labs, LLC, a Delaware limited liability company. DL Holdings is a wholly-owned subsidiary of Mobile Diagnostic Intermediate Holdings, Inc., a Delaware corporation. Intermediate is a wholly-owned subsidiary of Mobile Diagnostic Group Holdings, LLC, a Delaware limited liability company. All of these entities were created by affiliates of Audax Management Company, LLC and Frazier Management, LLC.

## IV.    **OVERVIEW OF THE SCHEME**

11.     Diagnostic Labs illegally provides "kickbacks" in the form of steep discounts for its Medicare Part A and HMO business to SNFs in return for their referral to Diagnostic Labs of their Medicare Part B and Medi-Cal business. This is profitable for Diagnostic Labs because of the different way in which Part A, HMO, Part B, and Medi-Cal reimbursements are made.

12.     Broadly speaking, Medicare Part A covers *inpatient care*, including stays in hospitals and SNFs, for patients who need ongoing "skilled level" care. Medicare Part A covers only medically necessary services and does not cover preventive or screening services. Medicare Part B, in contrast, covers *outpatient care*, which includes everything from ambulance services to prosthetic devices

and body braces.  Medicare Part B generally does cover preventive and screening services, including x-rays, laboratory tests, and other diagnostic tests.

13.     The Medicare Part A/B distinction is significant because of how the government mandates payment for Medicare Part A versus Medicare Part B services.  Section 4432(a) of the Balanced Budget Act ("BBA") of 1997 modified how payment is made for Medicare SNF services.  The BBA mandated the implementation of a **per diem** prospective payment system ("PPS") for SNFs covering **all costs** related to services furnished to beneficiaries under Part A.  SNFs, therefore, are reimbursed at a flat, per diem rate for their Part A inpatients.  This is often referred to as a **"capitated"** rate.

14.     Companies that provide SNFs with services to Medicare Part A beneficiaries, bill the SNFs for those services.  Laboratories, for example, that provide lab tests for Part A beneficiaries residing in a SNF, bill the SNF directly.  The SNF pays the laboratories for these Part A tests out of the per diem rate they receive from Medicare.

15.     Similarly, private HMOs generally pay SNFs a per diem, capitated rate for HMO-covered patients.  Companies that provide SNFs with services to patients covered by an HMO, bill the SNFs for those services.  The SNF pays the companies for these services out of the per diem rate they receive from the HMOs.

16.     In the case of laboratory tests and radiology services covered by Medicare Part B, in contrast, the laboratories bill Medicare directly.  Medicare Part B billing is based on a **"fee for service"** ("FFS") model.  In other words, in contrast to the "capitated" payment system of Medicare Part A, payment under Part B is on a *per test basis*.  Laboratories and radiology companies are required by statute to charge the Government their usual and customary for each lab test or x-ray.  In practice, however, laboratories such as Diagnostic Labs simply charge the Government the maximum amount the Government will pay.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

17.     Similarly, in the case of laboratory tests and radiology services covered by Medi-Cal, the laboratories bill Medi-Cal directly.  Medi-Cal billing is generally also based on a "fee for service" ("FFS") model, in which payment is on a *per test basis*.  Laboratories and radiology companies are required by law to charge Medi-Cal the lowest price that they charge the SNFs for the lab test – *i.e.*, prices equivalent to the discounted capitated rates charged to the SNFs.  In practice, however, as with Medicare Part B, companies such as Diagnostic Labs simply charge Medi-Cal the maximum amount Medi-Cal will pay.

18.     These differing payment methods provide Diagnostic Labs with the tools for its kickback scheme.  For the SNFs' Medicare Part A and HMO business, Diagnostic Labs offers the SNFs steep discounts (as much as 80%), in the form of capitated rates of as little as $1.00 per patient, per day.  Thus, for example, with a $1.00 capitated rate, if an SNF has 100 Medicare Part A and HMO patients, the SNF will pay Diagnostic Labs $100 per day, for **all** of the lab tests or x-rays required by those 100 patients.  **These discounted capitated rates do not come close to covering the cost of the lab testing or x-rays.**

19.     In return for these discounts, the SNFs refer all of their other lab test and radiology business, including lab tests and x-rays covered under Medicare Part B and Medi-Cal, to Diagnostic Labs.  For the Part B and Medi-Cal services, Diagnostic Labs bills the federal and state Government, rather than the SNF.  When it does so, Diagnostic Labs bills the Government the maximum that the Government will pay.  This "pull through" business is profitable for Diagnostic Labs, and Diagnostic Labs is able to make up for the losses it incurs by providing Part A services at such a heavy discount.

20.     If a customer who receives discounted capitated rates is not referring enough pull-through business to Diagnostic Labs, Diagnostic Labs will "pull," or threaten to pull, the discounted capitated rates from that customer.  Through this pull-through kickback scheme, also often referred to as a "swapping" scheme,

1   Diagnostic Labs has been able to nearly corner the market for SNF laboratory and

2   radiology business in Southern California.  As its website boasts, Diagnostic Labs

3   has "80% of market share in portable x-ray and over 95% of market share of

4   laboratory services" and is now the "largest portable x-ray and clinical laboratory

5   provider" in Southern California.  Diagnostic Labs has used taxpayer money to

6   pad its profits, and allow it to provide loss-leader discounts that lock law-abiding

7   competitors out of the market.

8   **V.    DEFENDANTS VIOLATED THE FALSE CLAIMS ACT BY**

9   **PROVIDING DISCOUNTED PRICES AS A KICKBACK IN**

10  **EXCHANGE FOR THE REFERRAL OF "PULL-THROUGH"**

11  **MEDICARE AND MEDI-CAL BUSINESS**

12          21.    Defendants violated the False Claims Act by charging Medicare and

13  Medi-Cal for lab tests that were referred to Defendants by providers because of

14  kickbacks offered to those providers by Defendants.  Defendant's practices are

15  unlawful as kickback schemes, strictly prohibited by Medicare and Medi-Cal

16  statutes.  Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits "Illegal

17  remunerations" for "Whoever knowingly and willfully offers or pays any

18  remuneration (including any kickback, bribe, or rebate) *directly or indirectly,*

19  *overtly or covertly*, in cash or in kind to any person to induce such person  to refer

20  an individual to a person for the furnishing or arranging for the furnishing of any

21  item or service for which payment may be made in whole or in part under a

22  Federal health care program . . . ."  42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis

23  added).

24          22.    Similarly, California Business and Professions Code section 650

25  prohibits, *inter alia*, the offer or acceptance of "any rebate, refund, . . . preference,

26  . . . *discount* or other consideration, whether in the form of money or otherwise,

27  as compensation or inducement for referring patients, clients, or customers."

28  (Emphasis added.)  Welfare and Institutions Code section 14107.2 prohibits every

1  Medi-Cal provider from soliciting or receiving "any **kickback**, bribe, or rebate,

2  **directly or indirectly, overtly or covertly**, in cash or in valuable consideration of

3  any kind . . . [i]n return for the referral, or promised referral, of any person for the

4  furnishing . . . of any service" covered by the Medi-Cal program. (Emphasis

5  added.)

6      23.    Interpretations of this language by the federal authorities provide

7  useful guidance in applying these anti-kickback laws, and establish that

8  Diagnostic Labs has violated the anti-kickback laws of the United States and

9  California through the conduct described herein.  For example, the federal

10  Department of Health and Human Services, Office of the Inspector General

11  ("OIG"), reaffirmed on May 9, 2008, that: "[W]hen a laboratory offers or gives an

12  item or service for free **or less than fair market value to a referral source, an**

13  **inference arises that the item or service is offered to induce the referral of**

14  **business**." OIG Advisory Opinion No. 08-06.  An anti-kickback "violation arises

15  if the discount whatever its size is **implicitly or explicitly tied** to referrals of"

16  government-funded business.  OIG Opinion Letter, April 26, 2000.

17      24.    In October 1994, the OIG issued a Special Fraud Alert, entitled "How

18  Does the Anti-Kickback Statute Relate to Arrangement for the Provision of

19  Clinical Lab Services?"  As an example of a situation giving rise to an inference of

20  an illegal kickback, the Special Fraud Alert cited laboratories that waive charges

21  to providers for lab tests of managed care patients (such as the Part A and HMO

22  patients here).

23      25.    An OIG industry guidance letter of September 22, 1999, specifically

24  warned that providing Part A discounts that "are not commercially reasonable in

25  the absence of other, non-discounted business," may give rise to anti-kickback

26  violations.

27      26.    OIG Advisory Opinion 99-2 addressed SNFs, and advised that

28  discounts are "particularly suspect" if they are below cost.

27.   OIG Advisory Opinion 99-3 stated, in pertinent part:

> Many items that are included in the Part A SNF PPS payment may be separately reimbursable on a charge or fee schedule basis under Part B when provided to Medicare beneficiaries who are not eligible for skilled nursing care under Part A, but who reside in a nursing facility with a SNF unit. **In such situations, there is a significant risk that suppliers might offer the SNF an excessively low price for items or services provided to SNF Part A patients reimbursed under the PPS methodology in return for the opportunity to service and bill nursing facility patients with Part B coverage. Such arrangements are highly suspect under the anti-kickback statute.**

(Emphasis added).

28.   Defendant Diagnostic Labs violated the anti-kickback laws described in these OIG opinions by providing below-cost discounts, and both implicitly and explicitly tying the discounts it provided to the referral of Medi-Cal and Medicare business. Accordingly, Defendant violated California's anti-kickback provisions, and the anti-kickback provisions of the United States. Defendant presented to Medi-Cal and Medicare claims for reimbursement of laboratory tests and x-rays, the referral of which was induced, in whole or in part, directly or indirectly, overtly or covertly, by the provision of discounts. Each of those claims constitutes a violation of the federal and California False Claims Acts.

29.   At all times relevant hereto, Defendant knew that federal and state law prohibited their giving or receiving these kickbacks. Defendant certified, both explicitly and implicitly, that each claim they submitted to Medicare and Medi-Cal would fully comply with all statutes and regulations, including the anti-kickback provisions, and that as Medicare and Medi-Cal providers, they would comply with all pertinent statutes and regulations, including the anti-kickback provisions.

30.   Each claim for payment submitted by Diagnostic Labs, from February 2000 to the present, to Medicare or Medi-Cal that was referred to Defendant by a provider who received discounts from Defendant constitutes a false claim in violation of the False Claims Act (31 U.S.C. § 3729 *et seq.*). Over this time period, Diagnostic Labs submitted millions of such claims for payments, and

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

1 received tens, if not hundreds, of millions of dollars from the Government as a

2 result of these illegal kickbacks.

3 **VI.   EVIDENCE OF THE SCHEME**

4       31.    Relators have compiled abundant specific facts and evidence showing

5 that Diagnostic Labs knowingly used discounted pricing as an illegal kickback to

6 induce the referral of pull-through Medicare Part B and Medi-Cal business, and

7 that the pull-through Medi-Cal and Medicare business is used to make up for

8 profits lost as a result of offering the discounts.

9       32.    For example, an internal Diagnostic Labs spreadsheet, entitled "Per

10 Diem Analysis:  April-2002," lists the discounts for over 200 of Diagnostic Labs'

11 SNF customers.  Among other data, the spreadsheet lists the total amount of Part

12 A and HMO per diem revenue for each customer, the number of tests performed

13 for the per diem patients, and the average revenue for each of those tests, based on

14 the per diem revenue.  The spreadsheet also lists the average revenue for all of the

15 tests performed for the customer, including tests billed to Medicare Part B.  For

16 almost every customer, the average revenue on the per diem tests is less than the

17 average total per test revenue.  In other words, Diagnostic Labs offers per diem

18 discounts, because it knows that in exchange it will receive more-lucrative pull-

19 through Part B business that will allow the account to be profitable, over all.

20 Diagnostic Labs wins, the customer wins, and the taxpayer loses.

21       33.    As another example, an analysis of three months of Diagnostic Labs'

22 actual invoices to one customer, a Southern California SNF, provides a stark

23 example of just how deeply discounted the per diem rates are.  Diagnostic Labs

24 offered the customer a per diem rate of $1.15 for Part A and HMO lab services,

25 and Part A and HMO radiology services.  Accordingly, based on the number of

26 Part A and HMO patients, Diagnostic Labs billed the customer a total of $2,339.10

27 for laboratory services over the three month period, and the same amount for

28 radiology services.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

---

**COMPLAINT**

9

34.    The invoices during that period list all of the lab tests and x-rays performed under the discounted per diem rates during that three month period. Based on these invoices, one can calculate the dollar amount that Diagnostic Labs should have charged the customer for these lab tests and x-rays in order to make a modest profit of approximately 5 to 15%. That total dollar amount is $12,899.82 for the laboratory services, and $12,379.39 for radiology. Diagnostic Labs thus charged the customer only $2,339.10 for hundreds of laboratory tests, the fair market value of which was $12,899.82; and charged the customer only $2,339.10 for hundreds of radiology services, the fair market value of which was $12,379.39. Diagnostic Labs lost large amounts of money on these services, but nevertheless continued to provide the discounted per diem rate to the customer. Diagnostic Labs did so in order to illegally induce the referral of Medicare Part B and Medi-Cal pull-through business.

35.    Other non-public spreadsheets in the possession of Relators show the same pattern for almost all of Diagnostic Labs' customers over the period covered by this complaint. For example, an analysis of hundreds of Diagnostic Labs' accounts, from March 2005, shows that Diagnostic Labs offered its customers an approximately **71%** discount off of fair market value for Part A and HMO lab tests, and an approximately **69%** discount off of fair market value for Part A and HMO radiology services, in exchange for those customers' pull-through business. Simply put, it would have been impossible for Diagnostic Labs to stay in business at the rates it charged its customers for Part A business; it was only able to do so because those discounted rates illegally induced the pull-through of profitable Part B and Medi-Cal business.

36.    Another analysis in Relators' possession entitled "Estimated Per-Diem Writeoffs for Months Not Closed" shows that by providing these deep discounts, Diagnostic Labs was essentially writing-off revenue from its customers that it could have earned had it charged fair market value for the Part A and HMO

1    testing.  The analysis shows that for the three month period from October through

2    December 2001, Diagnostic Labs "wrote-off" $1,913,803.35, and for the

3    subsequent nine-month period ending on September 30, 2002, "wrote-off"

4    $10,544,701.40.

5        37.    As mentioned above, "when a laboratory offers or gives an item or

6    service for free **or less than fair market value to a referral source, an inference**

7    **arises that the item or service is offered to induce the referral of business.**"

8    OIG Advisory Opinion No. 08-06.  These non-public Diagnostic Labs documents

9    establish that Diagnostic Labs was knowingly and consistently offering its

10   services for "less than fair market value to a referral source," and that it was doing

11   so in order to illegally induce the referral of service paid for by taxpayers.

12   **VII.   VIOLATION OF THE LOW-PRICE LAWS**

13       38.    As discussed above, Defendants violated the federal and California

14   False Claims Acts, on millions of occasions, by charging Medicare and Medi-Cal

15   for lab tests that were referred to Defendants by customers because of kickbacks

16   offered to those customers in the form of heavily discounted capitated or per diem

17   discounts.   Defendants also violated the False Claims Acts in a second way:  by

18   overcharging Medi-Cal in violation of specific laws that require Medi-Cal

19   providers to bill Medi-Cal their *lowest* rates for the same services under

20   comparable circumstances.  *See* 22 Cal. Code Regs. § 51501.  Instead, Diagnostic

21   Labs has habitually billed Medi-Cal at rates far higher than the deeply discounted

22   per diem capitated rates described above.

23       39.    Specifically, California Code of Regulations, title 22, section 51501,

24   subdivision (a), requires as follows:

25           ***Notwithstanding any other provisions of these***
             ***regulations,*** no provider shall charge for any service or
26           any article more than would have been charged for the
             ***same service*** or article to ***other purchasers of***
27           ***comparable services*** or articles ***under comparable***
             ***circumstances***.  (Emphasis added.)

28

40.    That regulation is intended to address "federal and state concerns with dual pricing and the Department's obligation to see that Medi-Cal is managed economically." *Physicians & Surgeons Laboratories, Inc. v. Department of Health Services* (1992) 6 Cal.App.4th 968, 985.  Defendant was free to charge any other purchaser any fee for its services, so long as Medi-Cal obtained the best price available to other purchasers of comparable services under comparable circumstances.

41.    As described above, Defendant has repeatedly defrauded the Medi-Cal program by charging its customer deeply discounted capitated rates, while charging Medi-Cal at rates well in excess of those discounted capitated rates.

42.    Defendant also offered some customers discounted FFS rates, rather than discounted capitated rates.  These discounted FFS rates were well below what Defendant billed Medi-Cal and Medicare for the same services, under comparable circumstances.  For example, Diagnostic Labs billed an SNF in Pasadena, California, at rates 40% below the Medicare maximum.  When billing Medicare and Medi-Cal for the same type of lab tests and x-rays, Diagnostic Labs did not provide these same discounts.

43.    Similarly, Diagnostic Labs has provided a Southern California chain of SNFs with FFS discounts of 40% off of Medicare, and a SNF in Anaheim, California, with FFS discounts of 30% off of Medicare.

44.    In addition to providing capitated and FFS discounts to induce the referral of Part B and Medi-Cal business, Defendant also frequently forgave customers' debts.  These write-offs also constitute illegal kickbacks, as they were provided in order to ensure that those customers continued referring Part B and Medi-Cal business.

45.    Defendant actively concealed the acts alleged herein from California and the United States.  Defendant never informed California or the United States of the discounted capitated rates it charged its other customers.  Moreover,

1  Defendant knew the pull-through scam described herein was illegal, and hid that

2  scam from California and the United States.

3  **VIII.  CAUSES OF ACTION**

4  **FIRST CAUSE OF ACTION**

5  **On Behalf of the United States**

6  **Federal False Claims Act, Presenting False Claims**

7  **31 U.S.C. § 3729(a)(1)(A)**

8      46.    Plaintiffs incorporates herein by reference and realleges the

9  allegations stated in Paragraphs 1 through 45, inclusive, of this Complaint.

10      47.    Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1))

11  presented or caused to be presented false claims for payment or approval to an

12  officer or employee of the United States.

13      48.    Defendant knowingly presented false records and statements,

14  including but not limited to bills, invoices, requests for reimbursement, and

15  records of services, in order to obtain payment or approval of charges by the

16  Medicare program that were higher than they were permitted to claim or charge by

17  applicable law.  Among other things, Defendant knowingly submitted false claims

18  for Medi-Cal and Medicare business that was obtained by means of, and as a result

19  of, illegal kickbacks, and charged more for services than would have been charged

20  for the same services to other purchasers under comparable circumstances.

21      49.    Defendant knowingly made, used, and caused to be made and used

22  false certifications that its claims, and all documents and data upon which those

23  claims were based, were accurate, and were supplied in full compliance with all

24  applicable statutes and regulations.

25      50.    The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(A) and

26  was a substantial factor in causing the United States to sustain damages in an

27  amount according to proof.

28

## SECOND CAUSE OF ACTION

### On Behalf of the United States

### Federal False Claims Act, Making or Using False Records or Statements

### Material to Payment or Approval of False Claims

### 31 U.S.C. § 3729(a)(1)(B)

51.    Plaintiffs incorporate herein by reference and reallege the allegations stated in Paragraphs 1 through 45, inclusive, of this Complaint.

52.    Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

53.    Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare and Medi-Cal program that were higher than they were permitted to claim or charge by applicable law.  Among other things, Defendant made and used bills for Medi-Cal and Medicare business that was obtained by means of, and as a result of, illegal kickbacks, and charged more for services than would have been charged for the same services to other purchasers under comparable circumstances.

54.    Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

55.    The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

### THIRD CAUSE OF ACTION

### (In the Alternative)

### On Behalf of the United States

### Federal False Claims Act, Retention of Proceeds to Which Not Entitled

### 31 U.S.C. § 3729(a)(1)(G)

56.     Plaintiffs incorporate herein by reference and reallege the allegations stated in Paragraphs 1 through 45, inclusive, of this Complaint.

57.     In the alternative, Defendant knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

58.     As discussed above, Defendant received far more money from the Medicare and Medi-Cal programs than it was entitled to.  Defendant knew that it had received more money than it was entitled to, and avoided its obligation to return the excess money to the Government.

59.     The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

### FOURTH CAUSE OF ACTION

### On Behalf of California

### California False Claims Act, Presenting False Claims

### California Government Code § 12651(a)(1)

60.     Plaintiffs incorporate herein by reference and reallege the allegations in Paragraphs 1 through 45, inclusive, of this Complaint.

61.     Defendant knowingly (as defined in California Government Code section 12650, subdivision (b)(2)) presented or caused to be presented false claims for payment or approval to an officer or employee of California.

62.     Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges to the Medi-Cal program that were higher than they were permitted to claim or charge by applicable law, including but not limited to section 51501 of title 22 of the California Code of Regulations.  Among other things, Defendant charged more for services than would have been charged for the same services to other purchasers of comparable services under comparable circumstances.

63.     Defendant knowingly submitted false claims for Medi-Cal business that was obtained by means of, and as a result of, illegal kickbacks.

64.     Defendant knowingly made, used, and caused to be made and used false certifications that the services for which it charged Medi-Care were rendered in full compliance with all applicable statutes and regulations.

65.     The conduct of Defendant violated Government Code section 12651, subdivision (a)(1) and caused California to sustain damages in an amount according to proof pursuant to California Government Code section 12651, subdivision (a).

## FIFTH CAUSE OF ACTION
### On Behalf of California
### California False Claims Act, Making or Using False Records or Statements
### To Obtain Payment or Approval of False Claims
### California Government Code § 12651(a)(2)

66.     Plaintiffs incorporate herein by reference and reallege the allegations stated in Paragraphs 1 through 45, inclusive, of this Complaint.

67.     Defendant knowingly (as defined in California Government Code section 12650, subdivision (b)(2)) made, used, or caused to be made or used false records or statements to get false claims paid or approved by California.

68.     Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges to the Medi-Cal program that were higher than they were permitted to claim or charge by law, including but not limited to section 51501 of title 22 of the California Code of Regulations.  Among other things, Defendant charged more for services than would have been charged for the same services to other purchasers of comparable services under comparable circumstances.

69.     Defendant knowingly submitted false claims for Medi-Cal business that was obtained by means of, and as a result of, illegal kickbacks.

70.     Defendant knowingly made, used, and caused to be made and used false certifications that the services for which it charged Medi-Cal were rendered in full compliance with all applicable statutes and regulations.

71.     The conduct of Defendant violated Government Code section 12651, subdivision (a)(2) and caused California to sustain damages in an amount according to proof pursuant to Government Code section 12651, subdivision (a).

## SIXTH CAUSE OF ACTION

### (In the Alternative)

### On Behalf of California

### California False Claims Act, Retention of Proceeds

### Of Inadvertently Submitted False Claims

### California Government Code § 12651(a)(8)

72.     Plaintiffs incorporate herein by reference and reallege the allegations stated in Paragraphs 1 through 45, inclusive, of this Complaint.

73.     In the alternative, Defendant was a beneficiary of inadvertent submissions of false claims to California, subsequently discovered the falsity of the claims, and failed to disclose the false claims to California within a reasonable time after discovery of the false claims.

74.     Defendant was the beneficiary of false claims, bills and charges to the Medi-Cal program for amounts that were higher than permitted by law, including but not limited to section 51501 of title 22 of the California Code of Regulations. Among other things, Defendant was the beneficiary of false bills and charges to the Medi-Cal program for more than would have been charged for the same services to other purchasers of comparable services under comparable circumstances.

75.     Defendant was the beneficiary of false claims for Medi-Cal business that was obtained by means of, and as a result of, illegal kickbacks.

76.     Defendant was the beneficiary of false certifications that the services for which it charged Medi-Cal were rendered in full compliance with all applicable statutes.

77.     Defendant, on discovering that it was the beneficiary of the submission of false claims for Medi-Cal reimbursement, failed promptly to disclose the overcharge to California and failed to make restitution of payments to which it was not entitled.

78.     The conduct of Defendant violated Government Code section 12651, subdivision (a)(8) and caused California to sustain damages in an amount according to proof pursuant to Government Code section 12651, subdivision (a).

## IX.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs by and through Relators, pray judgment in its favor and against Defendants as follows:

1.     That judgment be entered in favor of plaintiff UNITED STATES OF AMERICA *ex rel*. JON WILLEM PASQUA and JEFF HAUSER, and against Defendant KAN-DI-KI, LLC d/b/a DIAGNOSTIC LABORATORIES AND RADIOLOGY, according to proof, as follows:

/ / /

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

a.  On the First Cause of Action (Presenting False Claims (31
U.S.C. § 3729(a)(1)(A))) damages as provided by 31 U.S.C. §
3729(a)(1), in the amount of:

    i.  Triple the amount of damages sustained by the
Government;

    ii.  Civil penalties of Ten Thousand Dollars ($10,000.00) for
each false claim;

    iii.  Recovery of costs, attorneys' fees, and expenses;

    iv.  Pre- and post-judgment interest;

    v.  Such other and further relief as the Court deems just and
proper;

b.  On the Second Cause of Action (False Claims Act; Making or
Using False Records or Statements Material to Payment or
Approval of False Claims (31 U.S.C. § 3729(a)(1)(B)))
damages as provided by 31 U.S.C. § 3729(a)(1) in the amount
of:

    i.  Triple the amount of damages sustained by the
Government;

    ii.  Civil penalties of Ten Thousand Dollars ($10,000.00) for
each false claim;

    iii.  Recovery of costs, attorneys' fees, and expenses;

    iv.  Pre- and post-judgment interest;

    v.  Such other and further relief as the Court deems just and
proper; and

c.  On the Third Cause of Action (False Claims Act, Retention of
Proceeds to Which Not Entitled (31 U.S.C. § 3729(a)(1)(G)))
damages as provided by 31 U.S.C. § 3729(a)(1) in the amount
of:

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

   i.  Triple the amount of damages sustained by the Government;

   ii.  Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

   iii.  Recovery of costs, attorneys' fees, and expenses;

   iv.  Pre- and post-judgment interest;

   v.  Such other and further relief as the Court deems just and proper.

2.  That judgment be entered in favor of plaintiff STATE OF CALIFORNIA *ex rel.* JON WILLEM PASQUA and JEFF HAUSER, and against Defendant KAN-DI-KI, LLC d/b/a DIAGNOSTIC LABORATORIES AND RADIOLOGY, according to proof, as follows:

  a.  On the Fourth Cause of Action (California False Claims Act; Presenting False Claims, California Government Code § 12651(a)(1)), damages as provided by California Government Code section 12651, subdivision (a), in the amount of:

   i.  Triple the amount of California's damages;

   ii.  Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

   iii.  Recovery of costs, attorneys' fees, and expenses;

   iv.  Pre- and post-judgment interest;

   v.  Such other and further relief as the Court deems just and proper;

  b.  On the Fifth Cause of Action (California False Claims Act; Making or Using, or Causing To Be Made or Used, False Records or Statements To Obtain Payment or Approval of False Claim, California Government Code § 12651(a)(2))

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

damages as provided by California Government Code section 12651, subdivision (a) in the amount of:

    i.     Triple the amount of California's damages;

    ii.    Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

    iii.   Recovery of costs, attorneys' fees, and expenses;

    iv.    Pre- and post-judgment interest;

    v.    Such other and further relief as the Court deems just and proper;

  c.    On the Sixth Cause of Action (In the Alternative, California False Claims Act, Retention of Proceeds Of Inadvertently Submitted False Claims, California Government Code § 12651(a)(8)) damages as provided by California Government Code section 12651, subdivision (a) in the amount of:

    i.     Triple the amount of California's damages;

    ii.    Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

    iii.   Recovery of costs, attorneys' fees, and expenses;

    iv.    Pre- and post-judgment interest;

    v.    Such other and further relief as the Court deems just and proper.

/ / /

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

2.      Further, Relators, on their own behalf, request that they receive such maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the United States and/or California, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action.  Relators request that their percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

DATED:  February 8, 2010              **COTCHETT, PITRE & McCARTHY**

By:  _____

JUSTIN T. BERGER
*Attorneys for Relators*

1

## **DEMAND FOR JURY TRIAL**

2      Relators JON WILLEM PASQUA and JEFF HAUSER hereby demand a

3  jury trial on all issues so triable.

4

5  DATED:  February 8, 2010          **COTCHETT, PITRE & McCARTHY**

6

7

8                                By: _____

9                                    JUSTIN T. BERGER
                                     *Attorneys for Relator*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA ex rel. [FILED UNDER SEAL] and STATE OF CALIFORNIA ex rel. [FILED UNDER SEAL] | [FILED UNDER SEAL] |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| COTCHETT, PITRE & McCARTHY<br>840 MALCOLM ROAD, SUITE 200<br>BURLINGAME, CA 94010 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** TO BE DETERMINED

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. § 3730 et seq. FALSE CLAIMS ACT

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____   CV10 0965   **ORIGINAL**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

---

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
   ☑ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
   ☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

---

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**                    Date February 8, 2010

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

**Key to Statistical codes relating to Social Security Cases:**

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV10- 965 RGK (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY